**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

|  |  |
|---|---|
| LSP Transmission Holdings, LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>**NANCY LANGE**, Commission and Chair, Minnesota Public Utilities Commission; **DAN LIPSCHULTZ**, Commissioner, Minnesota Public Utilities Commission; **MATT SCHUERGER**, Commissioner, Minnesota Public Utilities Commission; **JOHN TUMA**, Commissioner, Minnesota Public Utilities Commission; **KATIE SIEBEN**, Commissioner, Minnesota Public Utilities Commission; and **MIKE ROTHMAN**, Commissioner, Minnesota Department of Commerce, each in his or her official capacity,<br><br>       Defendants. | Case No.:    17-cv-04490 (DWF/HB)<br><br><br>**MEMORANDUM OF LAW BY AMICI CURIAE GREAT RIVER ENERGY, MINNESOTA POWER, OTTER TAIL POWER COMPANY, AND SOUTHERN MINNESOTA MUNICIPAL POWER AGENCY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

Amici curiae Great River Energy (GRE); Minnesota Power, an operating division of Allete, Inc. (MP); Otter Tail Power Company (OTP); and Southern Minnesota Municipal Power Agency (SMMPA) (collectively, the Amici Utilities) respectfully submit this memorandum of law in support of Defendants' November 7, 2017 Motion to Dismiss.[1]

On September 29, 2017, LSP Transmission Holdings, LLC (LSP Transmission) filed a Complaint with this court challenging the constitutionality of Minnesota Statute

---

[1] No counsel for a party authored this brief, in whole or in part, and no person other than *amici curiae* and its counsel made any monetary contribution to fund the preparation or submission of this brief.

§ 216B.246 (§ 216B.246 or the Act). LSP Transmission's Complaint consists of two contentions invoking the dormant Commerce Clause of the U.S. Constitution – (1) that § 216B.246 either facially discriminates, or discriminates in purpose or effect, against interstate commerce in the construction and ownership of large transmission facilities (Compl. ¶¶ 85-90), or (2) that even if not discriminatory, § 216B.246 nonetheless imposes an undue burden on interstate commerce. (Compl. ¶¶ 91-92.) As discussed in Defendants' Memorandum in Support of Motion to Dismiss, neither contention sets forth a cognizable claim under the Constitution and accordingly, LSP Transmission's Complaint should be dismissed under F.R.C.P 12(b)(6).

The Amici Utilities submit this supplemental amici curiae memorandum to address two points. Regarding LSP Transmission's Commerce Clause discrimination claim, amici agree with Defendants that the Supreme Court's decision in *General Motors v. Tracy*, 519 U.S. 278 (1997) is dispositive. But even if LSP Transmission and the incumbents eligible for the right of first refusal under § 216B.246 were similarly situated, the statute still does not discriminate against out-of-state entities. Under many circumstances, § 216B.246 would preclude the Amici Utilities and other in-state incumbents from constructing new transmission lines in the State, just like LSP Transmission. As to LSP Transmission's undue burden claim, the Amici Utilities likewise share the Defendants' view that there is no inconsistency between the state law at issue and federal policy that would burden interstate commerce. But the Amici Utilities would also add that local regulation of utilities such as GRE, MP, OTP, and SMMPA by its very nature, places no burden on interstate commerce. These points are discussed below.

2

I.      **LSP Transmission's Complaint Fails to State a Claim of Facial Discrimination Under the Dormant Commerce Clause.**

As the Complaint correctly notes, a state statute that discriminates on its face against interstate commerce and in favor of in-state commerce would be subject to a "virtually *per se* rule of invalidity." *Associated Indus. of Mo. v. Lohman*, 511 U. S. 641, 647 (1994). No party could dispute that Minnesota has chosen to grant limited preferences to what the Act defines as an "Incumbent electric transmission owner." The preferences, however, neither favor all incumbents nor do they favor in-state over out-of-state entities. Indeed, by the express terms of § 216B.246 and LSP Transmission's own description of the entities affected by the Act, there simply is no facial discrimination against out-of-state entities.

Consider first LSP Transmission's allegation that the Act favors incumbent transmission owners. Under § 216B.246, an incumbent transmission owner is given the right of first refusal to "construct, own, and maintain an electric transmission line that has been approved for construction in a federally registered planning authority transmission plan *and connects to facilities owned by that incumbent electric transmission owner*." (emphasis added). Thus, even where a transmission line "has been approved for construction in a federally registered planning authority transmission plan," only those incumbents directly connected to the proposed line qualify for the right of first refusal.

The import of this limitation entirely undermines LSP Transmission's Complaint. In other words, even if multiple incumbent transmission owners as defined in § 216B.246 desire to build, own and maintain a transmission line approved by "a federally registered

planning authority," the incumbent(s) directly connected to the planned facilities can block them by invoking the right of first refusal. The preference is not for incumbents over non-incumbents, but for *certain* incumbents over both other incumbents as well as non-incumbents.

The Huntley-Wilmarth Project from which LSP Transmission states it was precluded by § 216B.246 from bidding to construct (Compl. ¶¶ 69-78) is a perfect case in point. LSP Transmission alleges that because of § 216B.246, it "and other out-of-state market participants are effectively barred from constructing" the Huntley-Wilmarth Project and other similar "transmission projects in Minnesota." (*Id.* ¶ 78.) The Huntley-Wilmarth Project connects Xcel Energy Inc.'s (Xcel) transmission system with that of ITC Midwest LLC (*Id.* ¶ 70) and as a result only Xcel and ITC Midwest would qualify for the right of first refusal. The Amici Utilities, just like LSP Transmission, would be precluded from building the new transmission facilities.

Thus, not only would § 216B.246 limit the bidding opportunities of non-incumbents (whether in-state or not), it would limit the bidding opportunities of the fourteen remaining incumbent utilities as well – including the Amici Utilities. The dormant Commerce Clause bars protectionist state and local laws that disfavor out-of-state interests, but it does not preclude states from favoring monopoly over competition, particularly where the state is regulating utilities – where its long-established goals are the protection of local consumers and the avoidance of economic waste. *General Motors Corp. v. Tracy*, 519 U.S. 278, 288–90, 303, 306–07 (1997) (*Tracy*).

Even if the Act favored all incumbent transmission providers over non-

incumbents, it still does not favor in-state over out-of-state interests. This is clear both from the text of the statute and LSP Transmission's own description of the incumbents favored by the Act. The Act defines an "Incumbent electric transmission owner" as

> any public utility that owns, operates and maintains an electric transmission line in [Minnesota]; any generation and transmission cooperative electric association; any municipal power agency; any power district; any municipal utility; or any transmission company as defined under section 216B.02, subdivision 10.

§ 216B.246, subd. 1(c).

Thus, by its express terms, the Act does not limit incumbents who can qualify for the right of first refusal to in-state entities. Indeed, as the Complaint notes in listing the sixteen entities that would qualify for incumbent status under the Act, five – nearly a third – are headquartered outside Minnesota. (Compl. ¶ 66.) And of the remaining eleven, several also operate in multiple states. (*Id.* ¶ 64.) The core of any facial discrimination claim under the dormant Commerce Clause is that the challenged law targets out-of-state entities for disparate treatment, i.e., "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Ore. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994). And "the burden to show discrimination rests on the party challenging the validity of the statute." *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979).

While the out-of-state nature of those targeted can be inferred where not expressly stated, *Amerada Hess Corp. v. N.J. Dep't of Treasury*, 490 U.S. 66, 76 (1989), a discrimination claim cannot be sustained based on the "hypothetical possibility of favoritism." *Tracy,* 519 U.S. at 311 (rejecting facial discrimination claim, noting that state

law did not preclude out-of-state entities from qualifying for favored tax exemption and holding that the court would not speculate that state would nonetheless favor in-state interests).

Finally, it would be no answer to the state of Minnesota's defense of the Act – that by its terms the Act does not target out-of-state entities – to claim that out-of-state entities are nonetheless harmed more than in-state entities. LSP Transmission does not make this claim in its Complaint, but even had it done so, its Complaint would still fail to state a claim of facial discrimination. "[A] regulation is not facially discriminatory simply because it affects in-state and out-of-state interests unequally," where there is "'some reason, apart from their origin, to treat them differently.'" *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1089 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 2875 (2014) (quoting *Philadelphia v. New Jersey*, 437 U.S. 617, 627 (1978)). The Minnesota law at issue in this case makes no distinction based on the origin of the affected parties. Incumbent utilities, in fact, comprise both in-state and out-of-state entities. Rather, the statute is designed to favor incumbents building transmission lines that connect to their own systems over both other incumbents and non-incumbents irrespective of the origin of any of them.

II.     **LSP Transmission's Complaint Fails to State a Claim of Discriminatory Intent or Effect Under the Dormant Commerce Clause.**

The same "virtually *per se* rule of invalidity" applicable to state laws that facially discriminate against out-of-state economic interests, applies also to state laws that have local protectionism as their purpose or effect. *Ore. Waste Sys., Inc.,* 511 U.S. at 100. But,

6

like parties alleging facial discrimination, those challenging a state law's purpose or effect

bear the burden of proving that purpose or effect. *Hughes*, 441 U.S. at 336. As with LSP

Transmission's facial challenge to § 216B.246, its Complaint on this alternate ground

comes up short.

"The central rationale for the rule against discrimination is to prohibit state or

municipal laws whose object is local economic protectionism, laws that would excite

those jealousies and retaliatory measures the Constitution was designed to prevent." *C &*

*A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994). *See also United Waste*

*Sys. of Iowa, Inc. v. Wilson*, 189 F.3d 762, 767 (8th Cir.1999). But where there is no

economic protectionism "at work" there is no constitutionally forbidden discrimination.

*S. Union v. Mo. Pub. Serv. Comm'n*, 289 F.3d 503, 508 (8th Cir. 2002).

Here, as in *Southern Union*, neither the purpose nor the effect of the challenged

legislation is to foreclose out-of-state economic interests from competing to construct

transmission service. In fact, LSP Transmission's Complaint does not claim that out-of-

state entities have been singled out for disadvantageous treatment. Its objection, as noted

earlier, is to the favored treatment given certain incumbents. Since the Complaint itself

concedes that many of the favored incumbents are themselves out-of-state entities, the

Complaint's discrimination claim fails under its own weight.

### III.    LSP Transmission Fails to State A Claim that § 216B.246 Places an Undue Burden on Interstate Commerce.

A statute that does not discriminate against out-of-state economic interests may

nonetheless run afoul of the dormant Commerce Clause if the statute places an undue

burden on interstate commerce. *Cotto Waxo Co. v. Williams*, 46 F.3d 790, 794 (8th Cir. 1995) (*Cotto*). But to prevail on a claim of undue burden, the complainant must demonstrate that any burden on interstate commerce "clearly exceeds the local benefits" of the law. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986). *See also Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). The LSP Transmission Complaint does not even contain allegations that would satisfy this stringent test.

LSP Transmission claims that even if § 216B.246 regulates evenhandedly, it nonetheless "unduly burdens interstate commerce by restricting entry to the transmission market in Minnesota, thus walling the state from new market participants." (Compl. ¶ 91.) For purposes of considering a motion to dismiss LSP Transmission's complaint, amicus accept LSP Transmission's contention that the right of first refusal, where it operates, effectively serves as a bar to bidding by those entities that do not qualify for the right of first refusal.[2] That assumption notwithstanding, there remain three insuperable obstacles to entertaining LSP Transmission's claim.

### A. LSP Transmission has failed to allege an identifiable burden on interstate commerce by which it is aggrieved.

In support of its claim, LSP Transmission cites the Eighth Circuit's decision *Cotto,*

---

[2] As LSP Transmission concedes, the Act creates only a right of first refusal, not an outright bar on the construction of new transmission facilities by non-incumbents. (Comp. ¶ 61.) There is no evidence on the degree to which the right of first refusal would actually prevent construction of new transmission facilities in Minnesota by non-incumbents. But for purposes of the motion to dismiss supported by amici, we have assumed the validity of LSP Transmission's assertion that the right of first refusal serves as a *de facto* bar. (*Id.* ¶¶ 61-62.)

8

*supra,* to support its claim that a loss of business by out-of-state entities would constitute evidence of a burden on interstate commerce. But in *Cotto*, although the "evidence of a burden on interstate commerce [was] slight," the court found that the plaintiff had actually been selling "petroleum-based sweeping compounds to Minnesota wholesalers and distributors" when a Minnesota state law made it ineligible to continue doing so. 46 F.3d at 792, 795. In other words, there was at least some nominal loss of interstate commerce alleged. Here, by contrast, the legislation challenged by LSP Transmission does not change the status quo – LSP Transmission does not allege that the legislation will halt any ongoing business it has in the state building transmission facilities. The Commerce Clause, in any event, "protects the interstate *market*, not particular interstate *firms*, from prohibitive or burdensome regulations." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 474 (1981) (emphasis added).

### B. Local regulation of utilities, even regulation aimed at limiting competition, does not thereby burden interstate commerce.

It is far too late in the day to argue that a local law that limits competition to address local concerns – even a law with the principle aim of limiting competition – in itself creates a burden on interstate commerce. LSP Transmission makes as a centerpiece of its claim that § 216B.246 burdens interstate commerce by the limits it places on competition to construct, operate and maintain transmission facilities. (Compl. ¶ 91.) But the courts have long recognized that it is within the state's traditional police power to restrict competition to advance local concerns without running afoul of the Commerce Clause, *Parker v. Brown*, 317 US 341, 359–68 (1943), and that this is so even where the

resulting conduct of private parties would otherwise violate the antitrust laws. *Id*. at 350–

52. As the Supreme Court stated more than a century ago:

> [T]here necessarily remains to the States until Congress acts, a wide range
> for the permissible exercise of power appropriate to their territorial
> jurisdiction although interstate commerce may be affected. It extends to
> those matters of a local nature as to which it is impossible to derive from
> the constitutional grant an intention that they should go uncontrolled
> pending Federal intervention. Thus, there are certain subjects having the
> most obvious and direct relation to interstate commerce, which
> nevertheless, with the acquiescence of Congress, have been controlled by
> state legislation from the foundation of the government because of the
> necessity that they should not remain unregulated, and that their regulation
> should be adapted to varying local exigencies.

*The Minn. Rate Cases*, 230 US 352, 402 (1913). Regulation of transmission siting is one

of those areas that has been left exclusively to the states to regulate. "[S]tates have

traditionally assumed *all* jurisdiction to approve or deny permits for the siting and

construction of electric transmission facilities." *Piedmont Envtl. Council v. FERC*, 558

F.3d 304, 310 (4th Cir. 2009) (emphasis added).

### C. Local utility regulation presumptively benefits the public.

Finally, and related, unlike the situation in *Cotto*, where the court found that

evidence of a public benefit from the challenged legislation was "miniscule," 46 F.3d at

795,[3] the benefits of utility regulation are both presumed as a matter of law, and well-

documented. That public utility regulation may limit competition, in fact is one of its

intended benefits. LSP Transmission's Complaint is that § 216B.246 has the effect of

---

[3] It bears emphasis that in *Cotto*, the court did not find that the statute in question unduly
burdened interstate commerce, but only that, given the "miniscule evidence" before it on
the benefits of the legislation, the statute's constitutionality "should be tested at trial." 46
F.3d at 795.

"walling off the state from new market participants." (Compl. ¶ 91.)  That, however, is the very nature of local utility regulation, which controls both prices and entry. *See, e.g.*, *S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 64 (1985) (acknowledging the "inherently anticompetitive" nature of rate setting); *Phoebe Putney Health Sys., Inc. v. FTC*, 133 S.Ct. 1003, 1013 n.7 (2013) (same). Of course, "[s]tates are not required to convince the courts of the correctness of their legislative judgments." *Clover Leaf Creamery Co.*, 449 U.S. at 464. But as important, the competition-limiting effect of state local utility regulation creates no undue burden on interstate commerce.

The purpose of that traditional utility regulation, as the Supreme Court stated in *Tracy, supra*, is to protect against "wasteful competition" by authorizing, but regulating local monopolies. 519 U.S. at 289–90. And, even where Congress has chosen to regulate the interstate transportation of natural gas and transmission of electricity, "[a] major purpose of these laws was to preserve and protect state and local regulation of the distribution of natural gas and electricity to local retail customers." *S. Union*, 289 F.3d at 507. Thus, far from establishing a Commerce Clause violation, state-established rights of first refusal like Minnesota's underscore why "local public utility rate regulation is presumptively valid." *Id.* at 509.

As noted earlier, where the state legislation has a valid public purpose, the burden is on the complainant to show that the harm to interstate commerce "clearly exceeds" the statute's local benefits.  Against the presumptive validity of § 216B.246, however, the Complaint offers nothing but the bare assertion that any benefits "are a mere pretext for discrimination against non-incumbent transmission developers" and that "basic economic

theory leads to the conclusion that competition benefits the markets and consumers."

(Compl. ¶ 92.)  But states "need not adhere in all contexts to a model of unfettered

competition." *N.C. Bd. of Dental Exam'rs v. FTC*, 135 S.Ct 1101, 1109 (2015).[4]

On the contrary, even if "basic economic theory" could be treated as evidence, the

Supreme Court has recognized that, particularly in the utility industry, competition does

not always protect consumers. *Tracy, supra*, 519 U.S. at 290. While LSP Transmission

offers the bare, unsupported assertion that Minnesota law would unduly burden interstate

commerce, the effect of granting its complaint would produce the opposite result.  "If

every duly enacted state law or policy were required to conform to the mandates of [the

federal antitrust statues], thus promoting competition at the expense of other values a

state may deem fundamental, federal antitrust law would impose an impermissible burden

on the States' power to regulate." *N.C. Bd. of Dental Exam'rs,* 135 S.Ct at 1109.

The Supreme Court observed in *Tracy* the historic purpose behind state local

---

[4] LSP Transmission devotes a considerable portion of its complaint to a discussion of the Federal Energy Regulatory Commission's (FERC) decision to eliminate "federal" rights of first refusal from interstate transmission tariffs and the competitive benefits FERC hoped that action might bring. (Compl. ¶¶ 21-34.) Conspicuous by its absence, however, is any claim that FERC's rules have preempted state authority to make a different policy choice, i.e., to enforce their own rights of first refusal. And for good reason.  The Complaint acknowledges that FERC's rules are not intended to override state transmission siting decisions *and* that it has approved a provision in the MISO tariff that incorporates the right of first refusal provisions in Minnesota law. (*Id*. at ¶¶ 44-45.)  It bears emphasis that these actions by FERC were not mere policy choice, but flowed from the fact that, with a limited exception not applicable here, *Piedmont Envtl. Council*, 558 F.3d at 312–13 (giving FERC power to authorize the construction of transmission facilities in "national interest corridors" where the state has withheld action on permit applications for more than a year), "states have traditionally assumed *all* jurisdiction to approve or deny permits for the siting and construction of electric transmission facilities." *Id*. at 310 (emphasis added).

utility regulation:

> It seemed virtually an economic necessity for States to provide a single, local franchise with a business opportunity free of competition from any source, within or without the State, so long as the creation of exclusive franchises under state law could be balanced by regulation and the imposition of obligations to the consuming public upon the franchised retailers.

*Tracy,* 519 U.S. at 290.  As LSP Transmission notes in its Complaint, testimony offered in support of the challenged Minnesota law (adopted unanimously by the state's legislators) invoked these same concerns, namely that "elimination of the incumbents' right of first refusal would remove local control over transmission projects and shift 'critical decisions'" out of the state's control. (Compl. ¶ 53.) What LSP Transmission omits is the reason why local control is important. The right of first refusal applies to transmission facilities that connect directly to the system of an incumbent.

As Xcel witness Rick Evans testified before the state Senate, incumbent utilities retain the obligation to serve their customers, but if they had no right of first refusal over the ownership, operation and maintenance of lines connecting to their systems, the loss of that control would compromise their ability to meet their service obligation. *See Hearing Before the Comm. on Energy, Utilities and Telecommunications*, S.F. 1815, 87th Minn. Leg. (2012) (Statement of Rick Evans at 00:06:35), *available at* https://www.leg.state.mn .us/senatemedia/saudio/2012/cmte_energy_032012.MP3.[5]    The Amici Utilities are obligated to provide reliable service to their customers.

This understanding of the consumer protection purpose of § 216B.246 is reflected

---

[5] A transcript of this committee hearing is attached as Exhibit A to the Affidavit of Julie Peick in support of Defendants' Motion to Dismiss.

in the January 15, 2013 Report to the Minnesota Legislature on Minnesota's Electric Transmission System prepared by Minnesota Department of Commerce, Division of Energy Resources and the Minnesota Public Utilities Commission. (Report), *available at* https://www.leg.state.mn.us/docs/2013/mandated/130074.pdf. There, the Report notes that § 216B.246 was intended to ensure that transmission lines are built in Minnesota "when such lines are needed and only if they are needed," and adds that "this new statute works in conjunction with Minnesota's existing statutes [governing need, reasonable rate, standard of service, regulation of construction, etc.] to ensure that Minnesota utilities provide reliable service, at reasonable costs, in consideration of Minnesota's policy objectives." Report at 8. *See also id.*, App. C, at 3-4. Simply, LSP Transmission cannot support any claim that the Act unduly burdens interstate commerce.

## CONCLUSION

For the reasons stated above, this Court should grant the State's motion to dismiss LSP Transmission's Complaint.

*SIGNATURE PAGE TO FOLLOW*

**Respectfully Submitted,**

Dated: November 14, 2017

/s/ Brian M. Meloy
Brian M. Meloy (#0287209)
Thomas C. Burman (#0396406)
**STINSON LEONARD STREET LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
612-335-1500
612-335-1657 Fax
brian.meloy@stinson.com
thomas.burman@stinson.com

*Attorneys for Great River Energy*

Dated: November 14, 2017

/s/ David R. Moeller
David R. Moeller (#0287295)
**Minnesota Power/ALLETE**
30 West Superior Street
Duluth, MN 55802-2093
218-723-3963
dmoeller@allete.com

*Attorney for Minnesota Power/ALLETE*

Dated: November 14, 2017

/s/ Jennifer O. Smestad
Jennifer O. Smestad (#288238)
**OTTER TAIL POWER COMPANY**
215 South Cascade Street
P.O. Box 496
Fergus Falls, MN 56537
218-739-8892
218-998-3165 Fax
jsmestad@otpco.com

*Attorney for Otter Tail Power Company*

Dated: November 14, 2017

/s/ B. Andrew Brown

B. Andrew Brown (#0205357)
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
612-340-5612
612-465-4961 Fax
Brown.Andrew@dorsey.com

*Attorney for Southern Minnesota Municipal Power Agency*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| LSP Transmission Holdings, LLC,<br><br>  Plaintiff,<br>  v.<br><br>**NANCY LANGE**, Commission and Chair,<br>Minnesota Public Utilities Commission;<br>**DAN LIPSCHULTZ**, Commissioner,<br>Minnesota Public Utilities Commission;<br>**MATT SCHUERGER**, Commissioner,<br>Minnesota Public Utilities Commission;<br>**JOHN TUMA**, Commissioner,<br>Minnesota Public Utilities Commission;<br>**KATIE SIEBEN**, Commissioner,<br>Minnesota Public Utilities Commission;<br>and **MIKE ROTHMAN**, Commissioner,<br>Minnesota Department of Commerce, each<br>in his or her official capacity,<br><br>  Defendants. | Case No.:     17-cv-04490 (DWF/HB)<br><br>**WORD COUNT COMPLIANCE<br>CERTIFICATE FOR MEMORANDUM<br>OF LAW BY AMICI CURIAE IN<br>SUPPORT OF DEFENDANTS'<br>MOTION TO DISMISS** |

I, Thomas Burman, hereby certify that the foregoing Memorandum of Law by Amici Curiae Great River Energy; Minnesota Power Company, an operating division of Allete, Inc.; Otter Tail Power Company; and Southern Minnesota Municipal Power Agency in Support of Defendants' Motion to Dismiss complies with the length and type size limitations of Local Rule 7.1(f) and 7.1(h). The length of the document is 4,118 words. I further certify that Microsoft Word 2010 was used in preparation of this Memorandum of Law, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the word count.

**Respectfully Submitted,**

Dated: November 14, 2017

/s/ Thomas C. Burman
Brian M. Meloy (#0287209)
Thomas C. Burman (#0396406)
**STINSON LEONARD STREET LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
612-335-1500
612-335-1657 Fax
brian.meloy@stinson.com
thomas.burman@stinson.com

*Attorneys for Great River Energy*